

**ArentFox Schiff LLP**

1301 Avenue of the Americas
42nd Floor
New York, NY  10019

212.484.3900   **MAIN**
212.484.3990   **FAX**

afslaw.com

**Brian Farkas, Esq.**
(212) 492-3297 DIRECT
brian.farkas@afslaw.com

**Alexandra M. Romero, Esq.**
202.828.3469 DIRECT
alexandra.romero@afslaw.com

April 4, 2024

**Via ECF**
Hon. Arun Subramanian, U.S.D.J
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Moore v. PPFA, Inc. et al.* (1:22-cv-08899-AS)
      <u>Defendants' Motion to Preclude Plaintiff's Expert Report</u>

Dear Judge Subramanian:

This Firm represents Defendants Planned Parenthood Federation of America, Inc. and Planned Parenthood Action Fund, Inc. ("PPFA" and "PPAF," together, "Defendants") in the above-referenced matter.[1] We respectfully request that the Court preclude the expert report of Alexander S. Bardey, M.D. (the "Bardey Report") that was belatedly disclosed by Plaintiff on March 28, 2024, along with any associated testimony.[2]

**<u>Background</u>**

This is a single-plaintiff employment case. Plaintiff alleges that she suffered various psychological and physical symptoms because of her work at PPFA, including "anxiety, persistent insomnia, loss of appetite, and periods of dizziness and shortness of breath" as well as hair loss caused by "stressful times." (ECF No. 1 at ¶¶ 184-85). She further alleges that she suffered a "panic attack so severe that she spent a day in the hospital." (*Id.* at ¶ 8). In her June 20, 2023 Amended Initial Disclosures, Plaintiff claims $5,000,000 in damages for emotional distress.

To assess these claims, Defendants retained Steven A. Fayer, M.D. as their expert. Dr. Fayer was disclosed to Plaintiff on December 13, 2023. (**Exhibit A**). He conducted an independent medical examination ("IME") of Plaintiff on January 31, 2024 and reviewed various medical records

---

[1] Under Your Honor's Individual Rule 5(D), the parties held a meet-and-confer on April 4, 2024 at 11 a.m. for approximately 30 minutes. Lead Trial Counsel (Travis Pierre-Louis for Plaintiff and Brian Farkas for Defendants) participated, along with Alexandra M. Romero for Defendants. At the end of the meet-and-confer, Defendants informed Plaintiff that their conversation had reached an impasse pursuant to Individual Rule 5(D)(4).

[2] Defendants file this application as a letter motion under Individual Rule 5(D) ("Discovery Disputes") rather than Individual Rule 8(J) ("Motions to Exclude Testimony of Experts") because the basis for preclusion is the discovery schedule, rather than Federal Rules of Evidence 702-705 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We note, however, that there are also many substantive bases to preclude the Bardey Report. If this instant application is denied, Defendants reserve their right to seek preclusion under Individual Rule 8(J).



obtained during discovery. Defendants produced Dr. Fayer's Expert Report on February 29, 2024, and then issued an Amended Expert Report on March 2, 2024 (all before the close of discovery).[3]

On February 7, 2024, Plaintiff designated Dr. Bardey as her expert. (**Exhibit B**). This was the first confirmation Defendants received that Plaintiff would retain an expert. After multiple extensions, discovery closed on March 4, 2024. The Court was clear: "***No further extensions will be granted for any reason.***" (ECF No. 41, emphasis added). Plaintiff did not produce any expert report.

On March 1, 2024, Plaintiff filed a motion to preclude Dr. Fayer, saying that she would be prejudiced for various reasons, including not having the chance to depose him. (ECF No. 45). The Court denied Plaintiff's motion, except to permit depositions of the parties' respective experts in the subsequent two weeks. (ECF No. 47). Plaintiff took Dr. Fayer's deposition on March 19, 2024.

On the last day of discovery—March 4, 2024—Plaintiff produced no expert report, as stated above. Instead, Plaintiff issued her Second Amended Initial Disclosures. In that document, she listed Dr. Bardey, as well as his colleague Dr. Miranda Rosenberg, as individuals who "may have knowledge and/or information regarding the allegations in the Complaint, including but not limited to, Plaintiff's claims of emotional distress and/or other compensatory damages[.]" Dr. Bardey and Dr. Rosenberg were now listed alongside four other medical providers whom Plaintiff previously described as "treating healthcare professionals." (ECF No. 45 at 1 n.1).

Defendants understood this new characterization to mean that Dr. Bardey and his colleagues were no longer experts (as Plaintiff stated on February 7, 2024) but were instead treating providers (i.e., fact witnesses). On March 15, 2024, Defendants requested that Plaintiff provide medical records release authorizations, as would be required for any other provider. (**Exhibit C**). We received no response. We followed up on March 19, 2024. (**Exhibit D**). Plaintiff's counsel finally replied on March 22, 2024, stating in part: "We are looking into your request. If there isn't an issue, we should be able to comply with it." (**Exhibit E**). We immediately replied to confirm. (**Exhibit F**).

Another week passed. On March 28, 2024, Plaintiff sent an email stating: "In lieu of providing [medical records release] authorizations, we are producing the documents that Bardey et al. would provide. The documents are attached here and bates stamped NM1860-1914." (**Exhibit G**).

This document was not medical records, but instead a 23-page expert report from Dr. Bardey addressed to Plaintiff's counsel, as well as an additional 32-pages of exhibits and notes. Although the Bardey Report itself is undated, it references two IMEs that were conducted on March 7, 2024 and March 12, 2024, ***both after the close of discovery*** on March 4, 2024. Moreover, it references a "collateral interview" that Dr. Bardey conducted with a non-party witness described as Plaintiff's "mentor" that took place on March 18, 2024.

---

[3] The only amendment was the attachment of a one-page mental health screening questionnaire from the IME.



The parties are now in the midst of summary judgment briefing. (ECF No. 49). During our meet-and-confer on this issue, Plaintiff's counsel stated that Plaintiff fully intends to rely upon the Bardey Report and use Dr. Bardey as an expert at trial.

**Argument**

Plaintiff's belated disclosure brazenly ignores the Court's schedule. This is particularly brazen given that the Court explicitly directed that "No further [discovery] extensions will be granted for any reason." (ECF No. 41). The Bardey Report and associated testimony should be precluded.

Plaintiff is playing games with her expert disclosure. Initially, Dr. Bardey was designated as an affirmative expert. Then, on the last day of discovery after producing no report, he was instead listed alongside Plaintiff's treating medical providers as a fact witness. Now, Plaintiff is re-characterizing Dr. Bardey as a rebuttal expert. Yet the ***overwhelming majority*** of the Bardey Report is not "rebuttal" at all, but rather affirmative conclusions about Plaintiff's claims.[4]

Regardless, the parties never agreed on rebuttal reports, and the Court's schedule never included them. Although the Court previously gave the parties the option to "change interim deadlines as they wish" (ECF No. 38), the parties never set distinct dates for affirmative and rebuttal reports. The sole deadline for the end-date of discovery was March 4, 2024. (ECF No. 41). Plaintiff never disclosed an expert report by this deadline. Plaintiff also never requested leave to issue a rebuttal.[5]

Plaintiff's strategy is clear: beg for forgiveness instead of ask for permission. She issued the Bardey Report nearly a month after discovery closed. This approach is particularly striking given that Dr. Bardey could have generated the vast majority of his Report long ago. After all, Plaintiff was fully aware of her emotional distress claims since at least the filing of this lawsuit on October 19, 2022. (ECF No. 1). She could have hired Dr. Bardey (or anyone else) to substantiate her claims literally any time in the past two years. Instead, she held her IME ***after the close of discovery*** and then produced the Bardey Report ***nearly a month later***. Moreover, Plaintiff produced the Bardey Report only after Defendants repeatedly asked her to clarify Dr. Bardey's relationship to this litigation.

This is not how discovery works. This litigation had a single end-date for all discovery of March 4, 2024, which was set after several extensions. The Court granted a further two-week extension for the limited purpose of expert depositions. Plaintiff cannot simply ignore these deadlines.

---

[4] Dr. Fayer's name appears only 12 times in the entire Bardey Report, largely in a single paragraph. The *vast* majority of the Bardey Report has nothing to do with "rebutting" Dr. Fayer. In reality, it is an affirmative expert report.

[5] Notably, the parties submitted a ***joint*** motion on March 8, 2024 regarding the summary judgment schedule that stated, in part: "Discovery is largely completed with the exception of expert depositions. (ECF No. 47)." (ECF No. 48). The reference in our joint motion to ECF No. 47 was the Court's Order that gave the parties two weeks to conduct expert depositions. In other words, Plaintiff affirmatively took the position that the ***only*** remaining discovery was expert depositions; she remained silent about her intention to have Dr. Bardey produce a rebuttal report—notwithstanding the fact that Plaintiff knew that Dr. Bardey apparently conducted an IME the day before, March 7, 2024.



Beyond these blatant violations of the schedule, Defendants would be prejudiced in numerous ways by these belated disclosures. The parties are in the middle of summary judgment briefing, due on April 29, 2024. Not only would these expert issues impact that briefing, but it would require Defendants to expend time and cost deposing Dr. Bardey and Dr. Rosenberg in the same month. Defendants would also need to simultaneously need to brief a substantive *Daubert* motion concurrently with summary judgment.[6] Plaintiff should not be entitled to put Defendants into this untenable position, given that Plaintiff herself simply elected to ignore the Court's schedule.

<center>***</center>

Defendants respectfully request that the Court preclude Plaintiff from relying upon the Bardey Report or any associated testimony in this litigation. If helpful to the Court, we are available for a conference at Your Honor's convenience.

<div style="margin-left:2em">Respectfully,</div>

*/s/ Brian Farkas*            */s/ Alexandra M. Romero*
Brian Farkas, Esq.            Alexandra M. Romero, Esq.

*CC (via ECF): All counsel of record.*

---

[6] *See* Individual Rule 8(J).

Defendants' motion is GRANTED, and Plaintiff's expert report and associated testimony are PRECLUDED under Fed. R. Civ. P. 37(c). After several extensions, the Court noted that "[n]o further extensions [would] be granted for any reason." Dkt. 40. The Court had also previously told the parties that only the final discovery deadline was firm; they could agree to interim deadlines however they liked. Dkt. 38. Yet they set no intermediate deadlines for expert reports, expert depositions, or rebuttal experts. So Defendants served their expert report toward the close of discovery. Nevertheless, Plaintiff complained and sought to preclude Defendants' expert. Dkt. 45. In particular, Plaintiff said the delay prevented her from deposing Defendants' expert. *Id.* So the Court set specific deadlines for the sole purpose of deposing experts. Dkt. 47. Since then, and after the close of discovery, Plaintiff redesignated her expert witness as a fact witness and then again as a rebuttal expert. Plaintiff's expert also conducted two examinations of Plaintiff and produced an extensive "rebuttal" expert report. (All of this was done without advising the Court.) The Court did not permit this additional discovery. And Defendants are prejudiced in preparing their summary-judgment motion (and potential motion to exclude) in light of this late-breaking production. Although Plaintiff says she would consent to extend the schedule, Plaintiff is not free to self-help itself to an expert report, served after the discovery period closed, after the Court already indicated that no further extension would be granted, and without asking for permission, only forgiveness after the fact. This case has been pending since 2022, and the Court has already put everyone on notice that the schedule has been delayed long enough and would not be further extended. Nor was the delay of the expert report justified. As noted, the burden was on the parties to work out deadlines that would prevent issues like this one from arising, or come to the Court in advance to work things out. They did not do so.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: April 9, 2024